Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 CR 659 - 1,2,4,14 | **DATE** | 4/6/2000 |
| **CASE TITLE** | United States of America vs. Gustavo, Martinez, Souffront, Marisol | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  **Enter MEMORANDUM, OPINION AND ORDER: For the reasons stated above, defendants' motion for a Giglio Hearing [679-1] and New Trial [679-2] is denied. The impeachment evidence at issue in this motion does not lead us to question our confidence in the verdict. Furthermore, this Court does not believe that there is any probability that the verdict would have been different had this information been disclosed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 7 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 706 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GUSTAVO COLON, ) <br> JORGE D. MARTINEZ, ) <br> JOSE SOUFFRONT, ) <br> MARISOL COLON, ) <br> ) <br> Defendants. ) | Case No. 97 CR 659 <br><br> Judge Wayne R. Andersen <br><br> **DOCKETED** <br> **APR - 7 2000** |

## MEMORANDUM OPINION AND ORDER

On July 22, 1998, a jury found Gustavo Colon, Jorge D. Martinez, Jose Souffront, and Marisol Colon ("Defendants") guilty of numerous drug related offenses. This matter is now before the Court on Gustavo Colon's Motion and Jose Souffront's Supplemental Motion for Giglio Hearing and New Trial, which was subsequently joined by Jorge Martinez and Marisol Colon. Defendants allege that the Government failed to disclose evidence and materials of exculpatory value before trial and that the Government's failure to disclose that material justifies a new trial. For the following reasons, this Court denies Defendants' Motions.

## BACKGROUND

All relevant background information related to the trial and conviction of the Defendants can be found in our previous Memorandum, Opinion and Order entered in U.S. v. Colon, 99 WL 77226 (N.D. Ill. January 8, 1999). On January 20, 1999, the parties were gathered for the sentencing of Jorge Martinez. The Assistant United States Attorney ("AUSA") requested that the Court postpone

the sentencing and hear argument in camera. The AUSA said that he had recently learned of a potential problem with one of the law enforcement officers who testified at trial, Jon Woodall. The AUSA, however, did not identify Woodall by name at that time. Because Woodall then was the subject of an active criminal investigation, the AUSA requested that all proceedings with respect to him be held in camera until the officer was indicted. The Court ordered a transcript prepared of the in camera hearing and ordered that it be read to all defense counsel not present during the meeting.

On March 23, 1999, the Government presented a motion which moved for the in camera and ex parte examination of documents relating to the Government's criminal investigation of Woodall. Because the investigation of Woodall was still ongoing, the Government did not want to reveal his identity to the Defendants. In the motion, the Government outlined the nature of the investigation and impeachment evidence and suggested to the court that it determine whether the evidence would have been material at trial without disclosing that evidence to the Defendants. The Government conceded that its investigation of Woodall had begun prior to the trial in this matter and that impeaching evidence regarding Woodall should have been disclosed to the defendants during the trial. The three Assistant United States Attorneys involved in the trial advised the Court that they had no knowledge of this investigation; hence, their disclosures were delayed. The Court accepts and believes their representations.

On April 23, 1999, the Court informed the Defendants that, based on its review of the materials that the Government submitted, the Court had concluded that Woodall's credibility was severely compromised, and that absent full disclosure to the Defendants, we would consider striking his testimony from the record.

On April 29, 1999, the Government filed a Memorandum in which it argued that Woodall's testimony should not be stricken from the record, but that the parties should merely analyze whether Woodall's credibility was material to the outcome of the trial without disclosing the evidence it had gathered concerning Woodall to the Defendants. The Government maintained that disclosure of the evidence would compromise the ongoing investigation. On April 30, 1999, the Court rejected this proposal, stating that the Defendants should be given the opportunity to analyze the information and, if they wished, further investigate the allegations concerning Woodall and their relevance to this case. We, therefore, told the Government that if it was unwilling to disclose the materials relating to its investigation of Woodall to the Defendants, the Court would be forced to order a new trial. The Court, hoping that the investigation of Woodall and his alleged co-conspirators could be concluded in the meantime, ordered the materials to be released to defense counsel by July 1, 1999. This time was subsequently enlarged to July 26, 1999, when the relevant materials were turned over to defense counsel pursuant to a protective order. The Court entered this protective order, under seal, and ruled that several of the documents submitted to the Court in the Government's March 23, 1999, submission need not be disclosed to the Defendants even under the broadest possible construction of the Government's obligation to disclose exculpatory or impeaching evidence.

On September 27, 1999, the Defendants filed the instant Supplemental Motion for Gigilo Hearing and New Trial ("Supplemental Motion"), which added to their original Motion for a Giglio Hearing filed in July of 1999. The Supplemental Motion detailed six items of allegedly suppressed evidence and argued that the suppression of that evidence prejudiced their ability to defend themselves at trial. The Supplemental Motion included allegations unrelated to Woodall's

credibility; namely, allegations which stem from alleged activities of an ATF agent and allegations about alleged perjury of a witness at trial.

In the Supplemental Motion, the Defendants first allege that the Government failed to disclose that Detective Woodall was being investigated for the theft of cocaine from an unrelated drug dealer's car. Second, the Defendants allege that the Government failed to disclose that Detective Woodall committed perjury in swearing to the affidavit that provided the basis for the search warrant executed on Jose Souffront's apartment. Third, the Defendants allege that the Government failed to disclose that Detective Woodall stole cocaine and money from Souffront's apartment. Fourth, the Defendants allege that the Government suppressed evidence that Woodall stole drugs, fabricated a search warrant, and engaged in criminal activity with respect to the arrest and prosecution of Evelyn Miranda, in an unrelated case. Fifth, the Defendants allege that the Government failed to disclose that the ATF agent covered up, and allegedly participated in, the theft of jewelry and money from Darrin Pippin in a 1992 search. Sixth, the Defendants allege that the Government suppressed the fact that Wilfredo Escobar committed perjury in omitting to testify about his receipt and sale of drugs for another drug ring during the time of the charged conspiracy.

In light of these allegations, the Defendants ask that we grant them a new trial, order the Government to turn over materials filed under seal, hold an evidentiary hearing regarding the alleged obstruction of justice, and hold an evidentiary hearing to determine the extent and timing of the Government's knowledge of the various alleged constitutional violations.

## DISCUSSION

Defendants allege that the Government failed to disclose materials that were favorable to the defendants. "[T] suppression by the prosecution of evidence favorable to an accused upon request

4

violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963); Crivens v. Roth, 172 F.3d 991, 996 (7th Cir. 1999). Impeachment evidence falls within the Brady rule. United States v. Bagley, 473 U.S. 667, 676-77 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. The rule encompasses evidence even if known only by the police investigators and not to the prosecutor. Kyles v. Whitley, 514 U.S. 419, 433-434 (1995). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Id. at 437.

A reasonable probability of a different verdict is shown when the Government's suppression "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678. However, "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 119 S.Ct. 1936, 1948 (1999).

In this case, the conspirators' own words convicted them. During a nine-week trial, the jury listened to hours of evidence recorded on approximately seventy audio tapes. The tapes featured numerous conversations in which the Defendants spoke about the charged drug sales. The jury was presented with more than enough evidence from the lips of the Defendants to convict all of the Defendants. The staggering weight of the evidence at trial leads this Court to the certain conclusion that there was no reasonable probability of a different result at the trial even had all of the allegedly suppressed evidence been disclosed. We will examine each of the Defendants' allegations in turn, but because we believe the verdict worthy of confidence, we deny Defendants' motion.

5

## I. Allegations Involving Detective Woodall's Behavior

### A. Theft of Drugs and Allegations of Perjury Regarding Search

There is no dispute that evidence favorable to the Defendants because it impeached Detective Woodall's credibility was suppressed. The materials that the Government disclosed suggest that Woodall stole narcotics from the car of an alleged drug dealer called Garza. Our inquiry, therefore, is whether the Defendants have been sufficiently prejudiced by the suppression of this impeachment evidence to grant their requests for new trials.

The Defendants argue that Woodall must have acted improperly during the search of Souffrant's apartment about which he testified, because he allegedly did so during a prior unrelated case. The Defendants conclude that Woodall's participation in and testimony about the search compromised the integrity of the search, mandating the exclusion of the evidence from it. From this premise, the Defendants further conclude that they are entitled to new trials.

The Defendants, however, have provided no support for their conclusion that, because Detective Woodall behaved improperly in one search, he must have behaved improperly with respect to the Souffrant search. Their argument boils down to the clearly untenable premise that because Woodall allegedly acted improperly on one occasion, he must have acted improperly here. We cannot make this leap, particularly when the record is replete with evidence that corroborates Woodall's account of the search, which we will discuss further below.

Even if we accepted the argument that this search was so severely compromised as a result of Woodall's involvement to render its fruits inadmissible, the Defendants still fail to show that they were sufficiently prejudiced. The cocaine obtained during the search was not the subject of any of the charges against the Defendants. More importantly, even had the search been invalidated, there

is no reason to believe that the Defendants would not have been convicted of the charged crimes. There is an abundance of the evidence against them unrelated to the search.

Nor can we conclude that had the Defendants possessed and used the impeaching evidence against Woodall regarding the search, the outcome of the trial would have been affected. At trial, Detective Woodall testified for a limited time, over the course of two days, about the search of Jose Souffront's apartment which occurred on February 5, 1996. On the first day he was questioned about his job history, background, and initial information leading to the search warrant for Jose Souffront's apartment on February 5, 1996. On the second day of direct examination, Detective Woodall identified the items seized during the execution of the search warrant, including a hand gun and rock and powder cocaine. Detective Woodall was also asked to describe how some of the items were used in a drug context. The entire scope of his testimony to the jury merely involved physically identifying exhibits that had been collected by other officers during the execution of the search warrant.

Woodall's role in the search was very limited. Nine other officers were present during the search. Woodall merely catalogued evidence that these other officers brought to him. His account of the search was corroborated by several different pieces of evidence. Most significantly, during the tape-recorded conversations played at trial, Souffrant, Gino Colon, Marisol Colon and Martinez discussed the search of Souffront's apartment. Souffront told Gino Colon that the police had obtained a gun and, using a code established at trial to represent cocaine, the remainder of his cocaine. Furthermore, Luis Santiago, Rene Herrera, and Wilfredo Escobar all provided evidence that Souffront's apartment had been searched and that the police had recovered drugs. Finally, Souffront admitted that his apartment had been searched and that drugs and a handgun had been

7

seized. Thus, even if Detective Woodall had been thoroughly discredited with the impeachment evidence, there is no reason to believe that the jury would have disbelieved his testimony, let alone have reached a different verdict. The impeachment evidence about witness Woodall simply does not undermine our faith in the fairness of the trial or its outcome.

B. Allegations of False Statements on Search Warrant Affidavit

The Defendants also challenge statements made in Woodall's affidavit in support of the search warrant. However, only Souffrant can challenge the affidavit because he alone had an expectation of privacy in his apartment. See Minnestota v. Carter, 525 U.S. 83 (1998) The evidence would have been admissible against the other defendants regardless of the legality of the search. United States v. Elie, 111 F.3d 1135, 1141 (4th Cir. 1987).

To challenge an affidavit in support of a search warrant the movant must demonstrate: (1) that the affidavit contained erroneous information, and (2) that the police officers knew that the affidavit was false or at least demonstrate that the officers recklessly disregarded the truth. United States v. Amerson, 185 F.3d 676, 688 (7th Cir. 1999). Furthermore, "there is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978).

The Defendants argue that the search warrant was defective on its face because it recites that Detective Woodall "on this date 04 FEB 94 met with a reliable informant," (when in reality Woodall met with the informant on February 4, 1996). The warrant itself was approved on February 4, 1996. After reviewing the rest of the affidavit in support of the search warrant, this Court is convinced that the date was merely a typographical error. On the second page of the affidavit, Detective Woodall notes that the reliable informant spoke of his visit to the Souffront apartment in February of 1996.

8

Furthermore, to challenge an affidavit, Souffrant also must show that the challenged statement or omission was necessary to the finding of probable cause. Franks, 438 U.S. at 155-56. The Defendants do not contend that the error was anything but typographical, but argue without authority that because it is defective on its face it should have been quashed. Clearly, the Fourth Amendment does not mandate the invalidation of an otherwise proper warrant application because a police officer, albeit one whose credibility has been attacked, inadvertently substituted a "4" for a "6" in the affidavit supporting the warrant. United States v. Leon, 468 U.S. 897, 897-98 (1984). We will not grant Souffrant a new trial based on this argument.

### C. Allegation of Misconduct in the Unrelated Evelyn Miranda Matter

Detective Woodall participated in a search of Evelyn Miranda's apartment on September 26, 1995 that yielded a kilogram of cocaine. This search occurred after a warrant was issued. Woodall did not sign the affidavit in support of the warrant. After Miranda was charged, she claimed that the statements made in support of the search warrant affidavit were false and that the police officers who participated in the search also stole a kilogram of cocaine that they found in her apartment. Miranda made no specific allegations against Woodall. The state court judge held a suppression hearing, during which Woodall did not testify, and ultimately denied Miranda's motion because he found the officers to be credible witnesses. These events occurred before the trial in this case began.

The Defendants argue that the government suppressed this evidence, favorable to them, and that they were prejudiced by the suppression. The government correctly points out that at the time of the trial, all it knew was that there were unsubstantiated allegations against officers with whom Woodall participated in the search of Miranda's apartment, allegations rejected by the state court in Miranda's case. As the Seventh Circuit has held, "[i]nformation withheld by the prosecution is not

9

material unless the information consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes." United States v. Dimas, 3 F.3d 1015, 1019 (7th Cir. 1993)(quoting United States v. Phillip, 948 F.2d 241, 249 (6th Cir. 1991)). We doubt that these allegations, which at the time were unverified, would have been admissible at trial to impeach Woodall under Rule 608(b). However, even had we allowed cross-examination of Woodall concerning this incident, we do not conclude, for reasons already discussed, that disclosure of this information would have made any difference at all to the jury. Our faith in the outcome of the trial and its fairness to the Defendants is not shaken.

Of course, by the fall of 1998, long after the conclusion of this trial, the Government's wiretap conclusively revealed that Miranda's allegations were credible, so much so that after the Government provided the judge in her state court case with this information, he vacated her conviction. However, the government had no reason to believe at the start of the trial that this was the case. Therefore, we do not believe that the Government suppressed material evidence. And even if we held otherwise, we do not believe that the Defendants were prejudiced by the non-disclosure of this information for the reasons that we already have discussed.

II. Allegations of ATF Agent Misconduct.

In 1994 a former (discharged) ATF supervisor filed a lawsuit against the ATF in which she made allegations of misconduct on the part of an ATF agent who was a lead agent in the investigation of this case and who testified at trial. Specifically, the former supervisor alleged that this agent stole jewelry and money from Darrin Pippen during a search in 1992. The government credibly contends that it provided the Defendants with this information. However, even assuming that this is not the case and that all of the allegations concerning this agent are true, we do not believe

that this impeachment evidence would have assisted the Defendants. The Defendants (and not the Government) called this agent to impeach Rene Herrera, a government witness, and to testify about Marisol Colon's state of mind when the agents arrested and interrogated her. The Court cannot find any reason why impeaching her credibility would have been useful to the defense, let alone raise any probability of a different verdict. Crivins, 172 F.3d at 998.

### III. Allegations of Perjury in Wilfredo Escobar's Testimony

The Defendants argue that Escobar testified at trial that his only sources for drugs during the conspiracy were "Shy, Pucho and Tito," members of the conspiracy. However, Defendants argue that the factual basis in Yolanda Navarro's plea agreement in United States v. Yolanda Navarro, No. 98 CR 923-6, demonstrates that Escobar was stealing drugs from other dealers and re-selling them to the police. The Defendants argue that had they known about this, they could have used that evidence to show that Escobar received his drugs from sources other than them. Therefore, they conclude that they are entitled to a new trial.

This argument does not hold water for several reasons. First, Escobar did not testify that his only sources for drugs were members of the conspiracy. On cross-examination, he admitted that he had at least ten other suppliers. If the Defendants wanted to argue that the drugs in question originated from sources other that the Defendants, they possessed the information to make this argument at the time of trial. Second, Navarro's plea agreement does not establish that Escobar was involved in a conspiracy to steal cocaine. Navarro's plea does not mention Escobar by name or alias. Third, the Defendants had a copy of a videotaped statement in which Escobar admitted to obtaining drugs from other sources. In fact, the defense used this videotape to cross-examine Escobar.

11

Defendants clearly were on notice that Escobar had a number of other drug sources that could have accounted for the sale of cocaine from 2420 N. Kedzie.

Because the Defendants have not identified any specific perjury and could have argued that the drugs came from different sources based on the information they already possessed, this Court does not believe that the Defendants have met their burden to obtain a new trial.

## CONCLUSION

For the reasons stated above, Defendants' Motion for a Giglio Hearing and New Trial is denied. The impeachment evidence at issue in this motion does not lead us to question our confidence in the verdict. Furthermore, this Court does not believe that there is any probability that the verdict would have been different had this information been disclosed.

Wayne R. Andersen
United States District Judge

Dated: April 6, 2000