IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 97-CR-659-1 |
| v. | Judge Mary M. Rowland |
| GUSTAVO COLON | |

**MEMORANDUM OPINION AND ORDER**

Defendant Gustavo Colon seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the COVID-19 pandemic and his health conditions. (Dkt. 927). The government filed a response in opposition to Colon's motion, (Dkt. 931), and Colon replied (Dkts. 933-34). For the following reasons, Colon's motion [927] is denied.

**A. Background Facts**

Colon is a 66-year-old man who has spent virtually his entire life behind bars. His current conviction stems from his conduct that took place between 1995 and 1997 while he was incarcerated at Menard Correctional Center (Menard) for murder.[1] Although incarcerated, Colon was convicted of engaging in a continuing criminal enterprise, the Latin Kings street gang, through the use of prison visits and telephone calls. During the two-and-a-half-month trial, seventy (70) of Colon's recorded

---

[1] Colon was convicted in 1972 for a murder he committed when he was 16 years old. He was sentenced to 30 to 60 years. While serving that sentence, Colon was convicted of a drug offense resulting in an additional 3 years to run consecutively.

1

telephone calls from Menard were played for the jury. The tapes and witness testimony persuaded the jury that Colon used the Latin Kings organization to distribute drugs and enforce discipline. *United States v. Souffront*, 338 F.3d 809, 833 (7th Cir. 2003) (summarizing facts on appeal).

The sentencing court determined Colon was responsible for distributing 56 kilograms of cocaine. Colon was also held responsible for being a leader of the Latin Kings. The sentencing court imposed a sentence of life. Colon is currently serving his sentence at USP McCreary, a high security facility in Pine Knot, Kentucky.

**B. Analysis**

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), a court may reduce an inmate's term of imprisonment after he has exhausted all "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. The government agrees that Colon has exhausted his administrative remedies as required by § 3582(c)(1)(A).[2] (Dkt. 931 at 11).

Once the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment if the court finds, as relevant here, that 1) the reduction is consistent with the factors in 18 U.S.C. § 3553(a); and 2) "extraordinary and compelling" reasons warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Tequila Gunn*, ____ F.3d ___, No. 20-1959, 2020 WL 6813995 at *2 (7th Cir. Nov. 20,

---

[2] The Warden denied Colon's request for home confinement based on his "history of violence." (Dkt. 931 at 10).

2020) (affirming district court's discretion to award compassionate release to prisoner who is "outside the scope of 18 U.S.C. § 3582(c)(1)(A)(ii)" based on "'extraordinary and compelling reasons'"). Colon bears the burden to establish that he is eligible for a sentence reduction.

### 1. Extraordinary and Compelling Reasons

In determining what constitutes extraordinary and compelling reasons to modify a person's sentence, courts consider the guidance contained in the U.S. Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. This section of the Guidelines and the Application Notes describe extraordinary and compelling reasons as including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Guidelines were amended November 1, 2018, when the Sentencing Commission last had a quorum, which predates both the Fair Sentencing Act's passage and the COVID-19 pandemic. A "vast majority" of district courts find that U.S.S.G. § 1B1.13, is "not binding but is, rather, helpful guidance" when considering compassionate release requests by inmates. *United States v. Cardena*, 2020 WL 2719643, at *3 (N.D. Ill. May 15, 2020) (quoting *United States v. Almontes*, 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020); *United States v. Tequila Gunn, supra* ("substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'").

This Court considers § 1B1.13 in conjunction with circumstances created or amplified by the pandemic. These circumstances may include: whether the defendant's health condition "places him at significant risk of complications should

3

he contract the virus;" if there is a "serious [COVID-19] outbreak of infections" at the defendant's prison; and if the "institution is unable to successfully contain the outbreak." *United States v. Downing*, 2020 WL 2789790, at *2 (C.D. Ill. May 29, 2020).

The COVID-19 pandemic is serious and deadly. As of this writing, more than 282,000 people in the United States have died from the novel coronavirus.[3] However, courts have found that the COVID-19 pandemic in and of itself is not an extraordinary and compelling reason warranting compassionate release. *See, e.g., United States v. Shannon*, 2020 WL 3489491, at *2 (N.D. Ill. June 26, 2020); *United States v. Allegra*, 15 CR 243 (N.D. Ill. Apr. 13, 2020), R. 232 at 7; *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").

While COVID-19 alone may not be extraordinary and compelling, a person's underlying health condition(s) and age, in light of the pandemic, may be. *See United States v. Collins*, 2020 WL 3892985, at *3 (N.D. Ill., July 10, 2020) (sarcoidosis and asthma presented an extraordinary and compelling reason for release); *Shannon*, 2020 WL 3489491, at *4 (combination of pre-diabetes, obesity, essential hypertension, and sixty-one years of age presented an extraordinary and compelling reason for release).

In addition to considering a person's health and conditions at the place of confinement, the court must consider the factors required by 18 U.S.C. § 3553(a).

---

[3] https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited 12/08/20).

4

*2. Colon's health and 3553(a) factors*

Colon is sixty-six years old and suffers from high blood pressure. While the CDC recognizes that a person with high blood pressure is at increased risk of severe illness from the virus that causes COVID-19; it must be noted that according to Mr. Colon's medical records, his is controlled by daily medication. (COLON_BOP_000026). In a record dated September 3, 2019, a nurse indicated that Colon's hypertension had been "alternating between stable and borderline" and noted that Colon was compliant with medication. (COLON_BOP_000043).

Mr. Colon has a BMI of 33 meaning he suffers from obesity. (COLON_BOP_ (000043). The CDC recognizes that a person with obesity is at increased risk of severe illness from the virus that causes COVID-19.[4] Mr. Colon has also been diagnosed with prediabetes, (COLON_BOP_00002), which can lead to Type 2 diabetes and persons with Type 2 diabetes are at increased risk of severe illness from the virus that causes COVID-19.[5]

The increased risk for older individuals, particularly those over 65, is well-established, but as the government observes, the greatest risk is for those over 85.[6]

---

[4] https://www.cdc.gov/obesity/adult/defining.html (last visited 11/22/20) and https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited 11/12/20).

[5] Prediabetes can lead to Type 2 diabetes. https://www.cdc.gov/diabetes/basics/prediabetes.html (last visited 11/12/20) and https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#diabetes (last visited 12/8/20).

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited 11/12/20).

5

Colon has other health risks that do not appear to increase his risk of suffering more serious consequences if he contracts coronavirus, but the Court considers them as contributing to extraordinary and compelling reasons to grant compassionate release: asymptomatic varicose veins, "moderate cataract formation", enlarged prostate, and an EGFR of 57 which can indicate the start of kidney disease. (COLON_BOP_00005, 000011, 000043-45).

In sum, Mr. Colon is a 66-year-old man with controlled hypertension, suffering obesity and pre-Type 2 diabetes. While in some circumstances, these facts may present extraordinary and compelling circumstances, consideration of the 18 U.S.C. § 3553(a) factors leaves no doubt that Mr. Colon is not a candidate for compassionate release.

Colon relies heavily on *United States v. Shannon*, No. 13 CR 535, 2020 WL 3489491, at *3 (N.D. Ill. June 26, 2020), where the court granted compassionate release to the defendant who was "61 years old, has pre-diabetes, is moderately obese, and has essential hypertension (or high blood pressure)." These factors are very similar to Colon. However, the *Shannon* said also noted the following:

> Shannon received a sentence longer than he might have otherwise because he was subject to a mandatory minimum sentence. Shannon's role in the crack distribution conspiracy was relatively small … he received only $700 of a $12,000 transaction. His ten-year sentence was harsh relative to the seriousness of his crime. Additionally, the mandatory minimum precluded the Court from considering the disparity that continues to exist in Guidelines sentences for crack and powder cocaine. Shannon's guidelines range would have been one-third as long if he had distributed powder cocaine instead of crack. The Court finds these circumstances relevant considering Shannon has already served nearly eight years of his ten-year sentence.

*Shannon*, 2020 WL 3489491, at *2.

Colon relies on several other cases that have approved compassionate release. (Dkt. 933 at 3). But in each instance, like *Shannon,* the court was persuaded that granting compassionate release (sometimes requiring home confinement) satisfied § 3553(a) factors. *See e.g., United States v. Handy,* No. 3:10-CR-128-8 (RNC), 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (compassionate release granted *nine months prior to release* date because Handy, at 53 years old, suffers from congestive heart failure, hypertension, obesity, and "chronic knee issues" and was incarcerated at Wyatt Detention Center, which had dozens of confirmed COVID cases); *United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746, at *3 (D.N.M. May 14, 2020) (where Lopez was "62 years old and suffers from high blood pressure and type II diabetes, the latter of which required the amputation of two of his toes and part of his left leg", the court found serving the *remaining 9 months* of a 36 month sentence in home confinement addressed § 3553 factors); *United States v. Gutman*, No. CR RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020) (where defendant had served 4 of his 6 month sentence, compassionate release granted to a 56-year-old who had multiple sclerosis (MS) and hypertension because the MS required him to take medication that suppresses his immune system; but court also relied on the fact that 50% of all adults hospitalized in the United State for COVID-19 suffered from hypertension).

Giving Colon the benefit of the doubt that his medical conditions present an extraordinary and compelling reason for compassionate release, an analysis under 18

7

U.S.C. § 3553(a) considers the defendant's history and characteristics, the seriousness of his offense, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of BOP's efforts to maintain the safety of inmates. 18 U.S.C. § 3852(c)(1)(A); U.S.S.G. § 1B1.13. In imposing a life sentence the sentencing court stated: "I have no doubt in my mind that this—this [2 year] portion of Mr. Colon's life—this particular criminal conspiracy involved the distribution of over, over 50 kilograms of cocaine." *Souffront*, 338 F.3d at 832. This Court is also mindful that this conduct occurred while Mr. Colon was in state custody—the government's description of the conduct as "brazen disregard for authority" is apt. (Dkt. 931 at 16). In applying an enhancement for use of a gun, the appellate court noted that "[t]estimony at trial revealed that weapons were carried and used for disciplinary and security purposes as part of the conspiracy." *Souffront*, 338 F.3d at 833. Furthermore, when a member of the Latin King's apartment was raided by the Chicago Police, Colon ordered that person's "punishment [for the discovery of drugs and a gun in his apartment] was to be shot." *Id.* Finally, the appellate court found that the "overwhelming evidence indicated, as the district court stated, that 'every single witness treated himself as a subordinate to Gino Colon' and 'there was unanimous agreement on his authority.'" *Id.*

The Court is mindful that Mr. Colon committed this conduct over 25 years ago in the mid-1990s. He has since earned his GED and taken over 142 classes in science and history and art. (Dkt. 933 at 9). The Court applauds these efforts at rehabilitation. But as Mr. Colon must acknowledge, rehabilitation by itself is not an

8

extraordinary and compelling reason to grant compassionate release. *See* 28 U.S.C. §994(t) ("The Commission … shall describe what should be considered extraordinary and compelling reasons for sentence reduction. . . . Rehabilitation alone shall not be considered an extraordinary and compelling reason.") The Court is impressed that Mr. Colon's family is willing to support him with housing and employment. It speaks well of him and his family. But given the severity of the conduct, the amount of the drugs distributed, Mr. Colon's unquestionable leadership role, and the aggravating fact that Mr. Colon orchestrated this criminal conduct from state custody, the factors articulated in § 3553(a) would not be served by a release after serving 23 years of a life sentence.[7]

*3. FCI McCreary*

Finally, when Mr. Colon filed his request, he reported that as of August 10, 2020, the BOP indicated four (4) confirmed active cases among inmates and staff at USP McCreary. (Dkt. 927 at 4). As of December 9, 2020, of the 1,389 inmates at McCreary, one (1) inmate was positive and 45 had recovered from COVID-19.[8] USP McCreary has reported no deaths among inmates or staff; it currently reports seven (7) positive staff members with nineteen (19) staff members having recovered. *Id.* It is certainly possible that there are more positive cases, given the prevalence of asymptomatic patients and the difficulty of social distancing in prison. However, with the

---

[7] Mr. Colon was taken into federal custody on September 18, 1997. (PSI at 6). He has served roughly 23 years and 3 months. This does not equate to 85% of a 30-year sentence and Mr. Colon received a far harsher penalty.

[8] https://www.bop.gov/coronavirus/ (last visited 12/09/20)

information at hand, current conditions in USP McCreary do not constitute an outbreak. *Cf. United States v. Chapman*, 2020 WL 2850984, at *2 (N.D. Ill. June 2, 2020) (in April, 101 inmates tested positive, and near the end of May, 363 inmates tested positive, which factored into defendant's compassionate release).

### C. Conclusion

After thoroughly considering all the facts presented, the Court does not believe that Mr. Colon presents an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A). If the situation at USP McCreary changes significantly or Mr. Colon's health deteriorates significantly, he may seek further relief. As the facts stand now, however, Mr. Colon's request is denied.

E N T E R:

Dated: December 10, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge